## Commonwealth v. Tapley

*David A. Clarke*, for Commonwealth.
*Eugene R. Lippman*, for defendants.

SATTERTHWAITE, J., November 2, 1956.—Defendants, having been convicted in summary proceedings

of three alleged violations of law in selling parcels of land in a subdivision in Solebury Township, this county, without the prior approval of the plan thereof by the Bucks County Planning Commission, have brought the records of the justice of the peace before this court on certiorari, a bond being filed by leave of court in double the amount of the fines and costs to act as a supersedeas.

The three informations upon which the within proceedings are founded were sworn to by Franklin C. Wood, the executive director of the Bucks County Planning Commission, and are all in substantially the same language. Each charges that defendants, being the owners of land which prior thereto had been divided by them into a subdivision "within the meaning of the Act of Assembly dated July 28, 1953, P. L. 723, Article XXII, Section 2204", did unlawfully sell and transfer part thereof within said subdivision on a specified date to specified purchasers "by deed of conveyance which describes the aforesaid premises according, and by reference, to the aforesaid plan of subdivision", which subdivision had not been approved by the Bucks County Planning Commission as required by the legislation referred to.

At the hearing before the justice of the peace, certified copies of the record of four deeds from defendants to the respective grantees therein named were received in evidence and were returnd to this court as a part of the transcript on the within certiorari. The first of these in point of time was the deed to a Mr. and Mrs. Shoe dated September 16, 1953, conveying a messuage and five acres of land "bounded and described (by metes and bounds) according to a survey thereof made July 27, 1953, by J. G. Park and Associate, Registered Surveyor and Professional Engineer of Washington Crossing, Pa."; the second was the deed to a Mr. and Mrs. Bair dated September 29, 1955, and conveying a

tract of undisclosed acreage "described (by metes and bounds) according to a survey thereof made September 3, 1954, by J. G. Park & Associate of Washington Crossing, Pa."; the third was the deed to a Mr. and Mrs. Kohler dated March 6, 1956, and conveying 3.731 acres of land "bounded and described (by metes and bounds) according to a survey thereof dated November 17, 1955, made by J. G. Park & Associate of Washington Crossing, Pa."; and the fourth was the deed to a Mr. and Mrs. Chamberlin dated May 18, 1956, and conveying one acre of land "bounded and described (by metes and bounds) according to a survey thereof dated November 17, 1955, prepared by J. G. Park & Associate of Washington Crossing, Pa." All the deeds also conveyed easement rights to a 20 feet wide driveway leading to U. S. Route 202 along a described surveyor's line which, in the Kohler deed alone, was referred to as being "shown on a plan prepared by J. G. Park & Associate, Registered Surveyors, Washington Crossing, Pennsylvania, on November 17, 1955, bearing identification number P55-1309."

According to the transcript, the sole witness before the justice of the peace was the prosecutor, Mr. Wood, who testified as to regulations of the planning commission, that he had not seen, nor had the commission approved, any subdivision plans made for defendants by J. G. Park and Associate dated September 3, 1954, and November 17, 1955, and that late in 1955 an agent of defendants had conferred with him concerning a preliminary plan of an unidentified subdivision calling for an unidentified right of way 20 feet in width which he suggested should be 50 feet wide, but that no further plans were ever submitted.

On the foregoing evidence, which was fully set forth in the transcript and about the scope and extent of which no question is even suggested, the justice of the peace found defendants guilty of three separate viola-

tions, the prosecutor apparently arguing, as he does in this court, that, although the first sale was exempt from regulation, upon the second sale a subdivision automatically resulted, there then being a division of the land into the required three parcels, one being the land previously sold, the second being that then sold and the third being the land remaining to the sellers.

Even if we disregard as a mere informality the erroneous reference in the information to section 2204 of the Second Class County Code of July 28, 1953, P. L. 723, 16 PS §5204, counsel for defendants having raised no question in respect thereto, and consider the prosecutions as arising under section 504 of The General County Law of May 2, 1929, P. L. 1278, as last amended by the Act of June 10, 1947, P. L. 479 (now repealed), as to the Bair transaction in 1955, and under section 2004 of the new County Code of August 9, 1955, P. L. 323, 16 PS §2004, effective January 1, 1956, as to the Kohler and Chamberlin transactions in 1956, we believe that the convictions were had under an incorrect interpretation of the law and should be set aside.

Section 2004 of the present County Code, supra, relates to the jurisdiction of a county planning commission (created in Bucks County by resolution of the county commissioners on January 30, 1951) over subdivisions of land within the county. Subsection (a) thereof defines a subdivision as follows:

"A division of any part, parcel or area of land by the owner or agent, either by lots or by metes and bounds, into lots or parcels, three or more in number, for the purpose of conveyance, transfer, improvement or sale, with appurtenant roads, streets, lanes, alleys and ways, dedicated or intended to be dedicated to public use, or the use of purchasers or owners of lots fronting thereon."

It also requires that all plans thereof, with certain

exceptions not here material, be submitted to and approved by the county planning commission before recording. After further subsections relating to administrative and other matters, subsection $(f)$ provides, in part, as follows:

"(f) Any owner . . . of any land *located within a subdivision,* who sells, transfers or agrees to sell, any land *by reference to, or exhibition of, or by other use* of a *plan of a subdivision,* before the same has been approved by the County Planning Commission shall, upon summary conviction thereof, be sentenced . . . for each lot or parcel transferred or sold or agreed to be sold. The description of such lot or parcel by metes and bounds in the instrument of transfer, or other document used in the process of selling or transferring, shall not exempt the transaction from such penalties, or from the remedies herein provided. . . ." (Italics supplied.)

Similar provisions appeared in section 504 of The General County Law of 1929, as supplied by the Act of 1947, supra, applicable in the year 1955.

The transcript in the instant case demonstrates that there was no showing whatsoever that defendants violated these penal provisions. All that the prosecution has established by the four exhibits in evidence, and it is not pretended that there was any other proof on the subject, was that defendants on separate occasions extending over a period of more than two and a half years sold four parcels of land as parts of what might be determined from recitals and adjoiners mentioned in the several descriptions to be one original tract of land owned by them. While for present purposes we may assume, without so deciding, that defendants thereby so divided their land as to constitute a "subdivision" within the definition of section 2004 $(a)$ above quoted, and while for purposes of this decision we may further assume, again without so de-

ciding, that we should reject defendants' contention that the division into parcels must all be effected at one time and not piecemeal, nevertheless it still does not follow that defendants have violated the penal provisions of section 2004(f). That prescribes, not the fact of subdivision as so defined, but rather the sale or transfer of land *by reference to* or other use of *a plan* of subdivision if such plan not be approved. The prosecution's case here must fall because there has been no showing that any such *subdivision plan* even exists, let alone was used in the sales and transfers in question.

Even if the hearsay nature thereof be overlooked, the only definite references to any surveys whatsoever were those contained in the deed descriptions themselves. The fact that such descriptions were by metes and bounds rather than by lot numbers, of course, does not preclude a finding of violation if the proofs are otherwise sufficient. However, these very descriptions, by their own terms, must fairly and reasonably be said to relate only to surveys, and also to a plan in the single case of the driveway in the Kohler deed, of the particular parcels thereby respectively conveyed. It would do extreme violence to language to hold that such mention of a survey or plan bearing a specified date did any more than identify when and by whom the boundaries of the individual tract of land so described were delineated; the reference in each instance is to a survey, not of a larger subdivision, but "thereof", i.e., of that particular parcel so conveyed by that particular deed. All such recital actually demonstrates is that surveyor's description was prepared on a particular date in each case to render certain the lines of the land transferred or the driveway referred to in each transaction; it certainly does not necessarily, or even by fair implication, prove beyond a reasonable doubt as

required in criminal cases that defendants had a "plan of subdivision" or that the several pieces of land in question were sold and transferred "by reference to, or exhibition of, or by other use of a plan of a subdivision" as required by the statute.

We are not unmindful of the difficulties of proof which may confront the planning commission in the enforcement of the above provisions of The County Code, assuming their constitutionality. Nevertheless, this proceeding is a criminal one, and the prosecutor necessarily must make out a case strictly in compliance with the enabling legislation before a conviction can be sustained. In this particular case, it would have been a simple matter to call the respective purchasers and the surveyor to prove, if it be the fact, that the transactions were consummated by the use of a subdivision plan.

We are also compelled to point out that this decision should not be interpreted as a precedent relaxing the general rule that on certiorari to a justice of the peace questions of the sufficiency of the evidence before him usually are not subject to review by this court. The reason for the general rule is that in the ordinary case the transcript does not bring up the evidence itself, only the substance thereof being required to be set forth. Since we cannot go outside the record in such a case, we generally are not in a position to pass on evidence matters or the sufficiency thereof. In the present proceedings, however, *all* the evidence on the subjects discussed was made a part of the record returned by the justice of the peace and itself shows the illegality of the respective convictions.

In view of the foregoing complete disposition of the case, it becomes unnecessary to pass upon defendants' further contention that the provisions of section 2004 are unconstitutional. Accordingly, we express no opinion thereon.

And now, this November 2, 1956, for the reasons stated in the foregoing opinion, the judgments of conviction of defendants by the justice of the peace are hereby reversed, overruled and set aside.